IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FRANCISCO KAKATIN, #A0259489, <br><br> Plaintiff, <br><br> vs. <br><br> RICHARD KIAʻAINA, COOK HELPER AT WAIAWA CORRECTIONAL FACILITY, sued in his individual capacity, <br><br> Defendant. | Civ. No. 15-00337 JMS-KJM <br><br> ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, ECF NO. 57 |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, ECF NO. 57

### I. INTRODUCTION

On March 2, 2017, pro se Plaintiff Francisco Kakatin ("Plaintiff") filed a Third Amended Prisoner Civil Rights Complaint ("TAC") alleging a 42 U.S.C. § 1983 claim for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. ECF No. 48. During all times relevant to his claim, Plaintiff was incarcerated at the Waiawa Correctional Facility ("WCF"). The TAC names Richard Kaiʻaina ("Defendant" or "Kiaʻaina"), a WCF civilian kitchen worker employed by the State of Hawaii Department of Public Safety, in his individual capacity, as the sole Defendant.

Currently before the court is Defendant's Motion for Summary Judgment. ECF No. 57. Pursuant to Local Rule 7(d), the court finds this matter suitable for disposition without a hearing. For the reasons that follow, the Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background[1]

Plaintiff, an African-American male, and Defendant were working in the WCF kitchen on August 31, 2014. TAC at 2-3; Def.'s Concise Statement of Facts ("CSF") ¶¶ 3, 4.[2] At approximately 11:30 a.m. that day, and in the presence of inmate workers Tilton Lasua ("Lasua") and Christopher Stark ("Stark"), Defendant allegedly yelled at Plaintiff calling him a "nigger" and "fucking nigger." *See* Pl.'s Interview at 2, ECF No. 101-3; Pl.'s Statement at 1, ECF No. 101-2; Lasua Phone Interview at 1, ECF No. 101-5; Stark Interview, ECF No. 101-3 at 3.[3] After yelling at Plaintiff, Defendant allegedly said that he "hates fucking nigger,"

---

[1] For purposes of this Motion, where facts are disputed, the court sets forth those facts most favorable to Plaintiff. Thus, although the exact timeline of events is far from clear — the dates of various events as reported by all relevant individuals are inconsistent — the court sets forth the relevant events in the timeline most favorable to Plaintiff.

[2] Unless otherwise noted, the facts from Defendant's CSF and supporting declarations are undisputed.

[3] ECF No. 101-3 includes three pages — Plaintiff's two-page Interview and the second page of Stark's Interview.

2

and that he was "going to fire his ass."  Lasua Interview at 1-2, ECF No. 101-6; TAC at 3 (alleging that "other inmates heard Defendant state that . . . [he] was going to get Plaintiff fired") (quotation marks omitted).[4]

On September 3, 2014, Plaintiff reported the incident to his boss, Janice Colon, saying that "[Defendant] was after [him]."  Pl.'s Statement at 2, ECF No. 101-2.  Plaintiff told Colon that "he didn't want to work if he needed to keep watching his back and told her what happened."  Sgt. McNeil's Summary of Investigation ("Summ.") Ex. #9, ECF No. 111 at PageID #508.[5]  Plaintiff later made inconsistent statements about what exactly he told Colon.  On September 26, 2014, he stated that when discussing the incident with Colon, he "didn't tell" her "what happen[ed] between [himself] and [Defendant]," but that "all I told her is that [Defendant] was in my face and he's after me and I can't be watching my back."  Pl.'s Interview at 2, ECF No. 101-3.  And on March 22, 2018, Plaintiff

---

[4] Although Defendant denies referring to Plaintiff as a "nigger" or any other racial slur, and denies threatening to get Plaintiff fired from the WCF kitchen workline, *see* Kia'aina Declaration ¶¶ 4-5, ECF No. 58-3, the court treats these facts as true for purposes of the instant motion.

[5] Pursuant to the court's instruction, on February 15, 2018, counsel for Defendant provided Plaintiff a copy of all documents produced during discovery, and on February 16, 2018, provided the court with a copy those documents.  ECF No. 110.  Unless attached to the parties' briefing, the discovery documents were not filed.  To his "Motion of Opposition," filed February 23, 2018, Plaintiff attached a portion of those documents comprising copies of Sgt. McNeil's summary of the exhibits obtained and considered as part of her investigation, but not the underlying exhibits.

described the incident — "[D]efendant used derogatory language towards me" — and stated that he told Colon on September 3, 2014 "that the incident occurred," to which Colon responded that she "was committed to look into it." Pl.'s Decl. ¶¶ 11-12, ECF No. 113-1.

On September 25, 2014, Colon reported to Sgt. McNeil that on September 3, 2014, Plaintiff "went to sick call" and failed to report to work. Sgt. McNeil's Summ. Ex. #21, ECF No. 111 at PageID #508. As summarized by Sgt. McNeil, Colon further reported that:

> Kakatin gave [Colon] his medical memo during breakfast. Cook Colon asked him does he really want to work in the kitchen? Inmate Kakatin said no he don't [(sic)] want to. Later that day Cook Colon attended the Program Committee . . . when she decided to remove (terminate) Kakatin. Ms. Yokoyama walked in and mentioned that Kakatin told her that Cook Kiaʻaina had called him a "Nigger." [Colon's] response was "I'll inform my supervisor" . . . which she did on September 4, 2014.

*Id.*; *see also* Colon Decl. ¶¶ 5, 6, ECF No. 58-4 (stating that "during the breakfast serving [on September 3, 2014, Plaintiff] approached me and gave me a medical slip explaining why he was not present . . . [and stated] that he did not wish to continue working [in the kitchen]"). According to Colon, after Plaintiff said he did not want to continue working in the kitchen, she "informed him that this would

4

result in his termination from the [kitchen] workline [and Plaintiff] confirmed that he no longer wanted to work on the [kitchen] workline."  Colon Decl. ¶ 6.

Sometime after speaking with Colon, Plaintiff told his case manager, Christy Yokoyama, that Defendant had called him a "nigger."  *See* Pl.'s Statements, ECF Nos. 101-2, at 2, 101-3, at 2; Yokoyama's Statement, 101-8, at 1; Sgt. McNeil's Summ. Ex. #2, ECF No. 111, at PageID #506.  Plaintiff also told Yokoyama that "Colon told him not to report to work anymore and that he should look for another workline."  Sgt. McNeil's Summ. Ex. #2, ECF No. 111, at PageID# 506-07.

Plaintiff states that he was notified of his termination from the WCF kitchen workline on September 9, 2014.  Pl.'s Decl. ¶ 14, ECF No. 113-1, TAC ¶ 7; *see* Pl.'s Statement, at 2, ECF No. 101-2 ("I was directed by [Colon] not to come back [to] work."); Sgt. McNeil's Summ. Ex. #2, ECF No. 111, at 2 ("On September 9, 2014 . . . Kakatin told [Yokoyama] . . . that Colon told him not to return to work anymore and that he should look for another workline."); *cf.* Lasua Interview at 2, ECF No. 101-6 ("Kakatin said that they kicked him out of the kitchen.").

According to Colon, on September 3, 2014, after speaking with Plaintiff that morning, she attended a program committee meeting.  Colon Decl.

5

¶ 7.  The "hiring and termination of inmates from various worklines" is discussed during such meetings.  *Id.*  Prior to the September 3, 2014 meeting, Colon "had decided to remove Kakatin from the [kitchen] workline because he had indicated . . . that he did not want to work there."  *Id.* ¶ 8.[6]  Prior to her decision to terminate Plaintiff, Defendant "did not ask, suggest, recommend or in any way influence [Colon's] decision that Kakatin should be terminated" from the kitchen workline.  *Id.* ¶¶ 10, 11.  And according to Defendant, "[p]rior to Kakatin's termination . . . [he] did not ask, suggest or recommend to anyone, including Colon, that Kakatin be terminated" from the kitchen workline.  Kia'aina Decl. ¶ 8, ECF No. 58-3.  Defendant further states that he "was never asked or consulted" about Plaintiff's termination, nor did he "speak to Colon about" the August 31, 2014 incident.  *Id.* ¶¶ 9-10.

    Plaintiff exhausted all administrative remedies by completing WCF's grievance process on or about January 10, 2015.  TAC at 2.  Plaintiff filed this action asserting a 42 U.S.C. § 1983 claim for violation of Plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause.  TAC at 5.  The TAC alleges that Defendant caused the termination of Plaintiff's employment "solely

---

[6] Although not submitted in the briefing by either party, included in the discovery documents provided to Plaintiff and to the court is Colon's September 5, 2014 Notice of Job Termination.  The Notice states that Plaintiff "was terminated from the Food Service workline on September 3, 2014," because he "QUIT."

6

because Plaintiff is an African-American," for which Plaintiff seeks general, compensatory, and punitive damages. *Id.* at 4-5.

**B.     Procedural Background**

Plaintiff filed his initial Complaint on August 25, 2015, and he filed an Application to Proceed In Forma Pauperis ("IFP Application") on September 10, 2015.  ECF Nos. 1, 4.  The court granted the IFP Application on September 14, 2015, and it dismissed the Complaint with leave to amend on October 20, 2015.  ECF Nos. 5, 6.  Plaintiff filed a First Amended Complaint on November 4, 2015, ECF No. 7, and on May 25, 2016, Defendant filed a Motion to Dismiss, ECF No. 17.  The court granted the Motion to Dismiss with leave to amend on August 29, 2015, ECF No. 19, and Plaintiff filed a Second Amended Complaint on October 13, 2016, ECF No. 28.  On November 29, 2016, Defendant filed a second Motion to Dismiss for failure to state a claim.  ECF No. 30.

On December 9, 2016, the court appointed pro bono counsel to assist Plaintiff in responding to the Motion to Dismiss.  ECF No. 38.  On February 16, 2017, the court dismissed the Second Amended Complaint with leave to amend.  ECF No. 46.  The court extended the appointment of pro bono counsel for the limited purpose of filing the TAC, ECF No. 47, which was filed on March 2, 2017, ECF No. 48.  On August 8, 2017, Defendant filed the instant Motion for Summary

7

Judgment. ECF No. 57. On September 22, 2017, Plaintiff's counsel filed a Motion to Withdraw as Pro Bono Counsel, ECF No. 74, which was granted on October 18, 2017, ECF No. 78.

Following several extensions of the briefing and hearing dates, on January 16, 2018, Plaintiff filed his Opposition to the Motion for Summary Judgment. ECF No. 101. Defendant filed his Reply on January 23, 2018. ECF No. 103. On February 5, 2018, Plaintiff filed a Statement indicating that he did not receive certain discovery material needed to oppose summary judgment. ECF No. 104. Following a status conference on February 12, 2018, the court directed Defendant to provide Plaintiff a copy of all discovery documents, submit to the court a list of all documents or a copy of all documents, and provide proof that Plaintiff received such documents. ECF No. 109. The court further provided additional time for Plaintiff to oppose summary judgment and Defendant to file an optional Reply. *Id.* On February 16, 2018, Defendant submitted a letter to the court, a copy of a letter to Plaintiff, a copy of all discovery documents, and proof of Plaintiff's receipt of such documents. The court docketed all but the actual discovery documents. ECF No. 110.

On February 23, 2018, Plaintiff filed a "Motion of Opposition to Summary Judgment," in which he includes a copy of Sgt. McNeil's summary of

some investigation exhibits, but not copies of the underlying exhibits. ECF No. 111. On March 9, 2018, Defendant filed a Reply. ECF No. 112. And on March 27, 2018, Plaintiff filed a "Concise Statement of Material Fact in Opposition to Defendant's Motion for Summary Judgment," supported by his March 22, 2018 Declaration, copies of Sgt. McNeil's summary of investigation exhibits, and copies of some of those exhibits. ECF No. 113.

### III. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

The moving party "bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing

9

*Celotex*, 477 U.S. at 323); *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Once met, the burden shifts to the non-moving party to "go beyond the pleadings" and designate specific facts in the record and/or admissible discovery materials showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial.").

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). When considering "evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Rather, the court must draw "all reasonable inferences supported by the evidence in favor of the nonmoving party." *Walls v. Cent. Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).

# IV. **DISCUSSION**

To sustain an action under 42 U.S.C. § 1983, a plaintiff "must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012).

In addition, a plaintiff asserting a § 1983 claim must demonstrate that the defendant either (1) personally participated in the alleged deprivation of his rights, *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."); or (2) caused the deprivation by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury," *Johnson*, 588 F.2d at 743-44. When determining the requisite causal connection, "[t]he critical question is whether it was reasonably

foreseeable that the actions of [a] particular . . . defendant[] would lead to the rights violations alleged to have occurred[.]" *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004); *see Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044 (9th Cir. 1994) (explaining that where official did not directly cause a constitutional violation, plaintiff must show the violation was reasonably foreseeable to that official).

Inmates "are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (citation omitted); *Harrington v. Scribner*, 785 F.3d 1299, 1305 (9th Cir. 2015); *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004). To state a viable equal-protection claim, a plaintiff must "show that the defendant[] acted with an intent or purpose to discriminate against plaintiff based on membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation and emphasis omitted).

**A.    Verbal Abuse**

Racial slurs and other verbal abuse — standing alone — do not violate a prisoner's constitutional rights. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir.

1997) ("As for being subjected to abusive language . . . [v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (citation omitted); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (holding that verbal harassment alone does not violate the Eighth Amendment); *Pennebaker v. Sacramento Cty. Sheriff*, 2015 WL 269384, at *2-3 (E.D. Cal. Jan. 20, 2015) ("racially charged language" in itself, does not violate the Constitution, laws, or treaties of the United States and is not cognizable under § 1983).

Here, although disputed by Defendant, Plaintiff provides evidence to show that Defendant uttered racial slurs at Plaintiff in the WCF kitchen. Plaintiff also provides evidence that Defendant threatened to get Plaintiff fired from his job on the WCF kitchen workline. But even assuming that these facts are true, verbal abuse in the form of racial slurs and threats is not sufficient to establish a violation of Plaintiff's constitutional rights. *See Freeman*, 125 F.3d at 738; *Keenan*, 83 F.3d at 1092.

**B.      Termination of Employment**

An inmate has no constitutional right to employment while incarcerated. *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997). However, the Fourteenth Amendment's Equal Protection Clause does prohibit the

termination of an inmate's employment on the basis of race. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (holding that even if a person has no right to a particular government benefit, the government "may not deny a benefit to a person on a basis that infringes on his constitutionally protected interests"); *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (recognizing that constitutional prohibitions against racial discrimination apply to prisoners); *see also Richard v. Fischer*, 38 F. Supp. 3d 340, 352 (W.D.N.Y. Aug. 7, 2014) ("Despite the fact that an inmate does not have a property interest in employment while incarcerated, prison officials cannot discriminate against an inmate in the distribution of work assignments."); *Jones v. Lockett*, 2009 WL 2232812, at *10 (W.D. Pa. July 23, 2009) (finding allegation that inmate was fired from his prison job based on racial animus sufficient to state an Equal Protection claim).

But Plaintiff fails to provide any evidence that *Defendant* was directly responsible for Plaintiff's termination or otherwise involved in the decision to terminate Plaintiff from the WCF kitchen workline. That is, Plaintiff fails to show that Defendant was personally involved in terminating Plaintiff or caused Colon to terminate Plaintiff's employment. Although Plaintiff contends that he was not terminated until September 9, 2014, his evidence shows only that he was *notified* on that date of Colon's decision to terminate him. He does not provide any

14

evidence that the actual decision to terminate him was made on September 9, 2014. Thus, Plaintiff's argument — that the date of termination is a disputed fact precluding summary judgment — fails.

And although not obligated to do so, the court searched not only the documents provided by Plaintiff, but also all discovery documents Defendant submitted to the court. The evidence points to a single conclusion — Colon alone decided to terminate Plaintiff from the WCF kitchen workline on September 3, 2014, without input from Defendant. That is, despite Defendant's threat to get Plaintiff fired, there is not one shred of evidence to suggest that he took any action to cause that result.[7] The evidence is undisputed that Defendant did not actually terminate Plaintiff. Both Colon and Defendant state that Defendant did not provide any input prior to Colon making the decision to terminate Plaintiff. And even assuming Colon knew that Defendant uttered racial slurs at Plaintiff prior to her decision to terminate Plaintiff, there is simply no evidence that *Defendant* was involved in any way with Colon's decision. Thus, Plaintiff has failed to establish Defendant's personal participation in his termination.

---

[7] Whether the court considers only the evidence provided by Plaintiff or considers all of the discovery evidence, the result is the same — there simply is no evidence that Defendant took any action to effectuate Plaintiff's termination.

Further, even assuming Colon made the decision to terminate Plaintiff after learning that Defendant had uttered racial slurs at Plaintiff, there is no evidence that it was reasonably foreseeable to Defendant that uttering racial slurs at Plaintiff would cause Colon to terminate Plaintiff from the WCF kitchen workline.

The court recognizes that, if true, Defendant's conduct toward Plaintiff on August 31, 2014 was particularly offensive and completely inappropriate. Nevertheless, because Plaintiff has failed to provide evidence that Defendant personally participated in Plaintiff's termination or knew or reasonably should have known that his conduct would cause Colon to terminate Plaintiff from the WCF kitchen workline, he cannot sustain his § 1983 claim based on the theory that *Defendant* was responsible for his termination. Thus, Defendant is entitled to summary judgment. *See Celotex Corp.*, 477 U.S. at 322; *Broussard*, 192 F.3d at 1258.

///

///

///

///

///

## V. **CONCLUSION**

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. The Clerk of Court is DIRECTED to enter judgment and close this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 29, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Kakatin v. Kaiʻaina*, Civ. No. 15-00337 JMS-KJM, Order Granting Motion for Summary Judgment, ECF No. 57